**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| MICHAEL FORREST JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    1:09CV1009 |
| | ) |
| NORTH CAROLINA DEPARTMENT OF | ) |
| TRANSPORTATION and GOODWILL | ) |
| INDUSTRIES OF NORTHWEST NORTH | ) |
| CAROLINA, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION, ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United States Magistrate Judge on the Motion to Dismiss Submitted by Defendant North Carolina Department of Transportation (Docket Entry 12), Defendant Goodwill Industries of Northwest North Carolina, Inc.'s Motion to Dismiss (Docket Entry 15), and Plaintiff's Motion to Reissue Summons (Docket Entry 21). (See Docket Entry dated Dec. 21, 2010.) For the foregoing reasons, the Motions to Dismiss should be granted and Plaintiff's Motion to Reissue Summons will be denied.

## BACKGROUND

In his Complaint, Plaintiff Michael Forrest Jones claims to be "domiciled in Pennsylvania, but [] currently residing in the state of North Carolina contemplating a permanent relocation." (Docket Entry 2, ¶ 1.) The Complaint offers no facts in support of his claim of "domicile" in Pennsylvania. (See id.) It describes

Defendant North Carolina Department of Transportation ("NCDOT") as "an agency of the State of North Carolina" and Defendant Goodwill Industries of Northwest North Carolina, Inc. ("Goodwill") as "a private, not-for-profit charitable organization operating out of Winston-Salem, North Carolina." (Id.)

The Complaint describes "Mohawk Flooring and Janitorial Services, Inc." ("Mohawk") as Plaintiff's "employer." (Id. ¶ 3(c).) According to the Complaint, "Plaintiff was employed by Mohawk on or about July 17, 2009 as an attendant at the rest area [on Interstate 40 in Davie County, North Carolina, between Mocksville and Winston-Salem], to perform cleaning and maintenance duties at the rest area pursuant to a contract between [NC]DOT and Mohawk . . . ." (Id. ¶ 4.) The Complaint lays out a series of objections to the contract and working relationship between Mohawk and NCDOT. (See id. ¶¶ 7-10.) Specifically, the Complaint alleges that:

(1) NCDOT employees "directly supervise[] and control[] the [Mohawk] employees at the rest areas . . . and demand[] that specific work be done, whether or not the work is called for in the contract" (id. ¶ 8(a); see also id. ¶ 8(d) ("[NC]DOT regularly and habitually gives orders directly to the employees of the rest area; and cites problems at the rest area . . . directly to the employees at the rest area without

2

going through Mohawk's management, or without informing
Mohawk's management until some later time if at all."));

(2) NCDOT employees "set the thermostats in the rest area's
buildings at 68 degrees – resulting in an uncomfortably low
temperature in the working area because the readout on the
thermostat is probably inaccurate or malfunctioning – and
stated that any modification of the thermostat by employees
will result in 'immediate termination'" (id. ¶ 8(c));

(3) NCDOT requires Mohawk employees to fill out extensive time
sheets such that "[t]he specific activities of any Mohawk
employee from moment to moment are directly accountable to the
[NC]DOT" (id. ¶ 8(e));

(4) the contract between Mohawk and NCDOT, which "was not
negotiated between the [NC]DOT and Mohawk nor open to
negotiation" (id. ¶ 9(f)), specifically sets the hourly rate
of pay for Mohawk employees, the times at which each employee
begins and ends his or her shift, job duties of each employee
and the days and times for completion, and disciplinary
actions for NCDOT (id. ¶ 9(a)-(e)); and

(5) NCDOT generally "refused to permit necessary and proper
maintenance of items within the rest area that is [sic] easily
within the capability of Mohawk and its employees, then sought
to fault Mohawk and its employees for inadequate maintenance"
(id. ¶ 10(d)).

3

In light of the foregoing allegations, the Complaint asserts that "[t]he rest area employees are employed by the [NC]DOT [rather than Mohawk] by every standard used to define 'employment' by the Fair Labor Standards Act [], the courts, and the Internal Revenue Service . . . ." (<u>Id.</u> ¶ 11(a).) The Complaint goes on to allege that NCDOT manufactured a rationale for terminating the contract with Mowhawk (<u>see</u> <u>id.</u> ¶¶ 12-14) and then entered into negotiations with Goodwill "without going through any bidding process as required by law" (<u>id.</u> ¶ 16).

Based on the facts alleged, Plaintiff first asserts a claim against NCDOT for "Violation of Fourteenth Amendment, U.S. Constitution, by [NCDOT]" (<u>see</u> <u>id.</u> ¶¶ 19-26). In this claim, Plaintiff asserts that his allegations show that he and other Mohawk employees were constructively employees of the State of North Carolina, and that the contract between NCDOT and Goodwill will perpetuate that status. (<u>Id.</u> ¶¶ 19-24.) As a result, he claims that:

> pursuant to the equal protection clause of the Fourteenth Amendment to the Constitution of the United States; so long as he is working under the direct control and supervision of the [NC]DOT . . . he and the other rest area employees are entitled to the same compensation and the same benefits . . . as provided by law to other employees of the state of North Carolina and on the same terms.

(<u>Id.</u> ¶ 26.)

Plaintiff next asserts a claim for "Failure by the [NC]DOT to treat plaintiff and other Mohawk employees similarly situated in a

4

manner similar to all other state employees as required under the Equal Protection clause." (Id. ¶ 27.) This claim in its entirety states:

> For a second claim, [P]laintiff repeats and realleges the facts set forth in Paragraphs 19 through 25; and on the basis of the facts set forth therein, asserts that he is entitled to compensation for any difference in pay and benefits as set forth in Paragraph 26 and accumulating or having accumulated from his original date of hire on or about July 17, 2009.

(Id. ¶ 27.) The paragraphs Plaintiff cites in support of this claim (paragraphs 19-25 and 26) form the entirety of Claim One. There is no apparent legal distinction between Plaintiff's first and second claims. In the first, Plaintiff claims entitlement to compensation and benefits comparable to those of State employees; in the second, he essentially seeks relief as a result of that entitlement.

Plaintiff also asserts the following state law claims in his Complaint: "Wrongful termination of employment" against NCDOT (id. ¶ 28); "Improper business interference by [NCDOT] and Goodwill []" (id. ¶¶ 29-33); and "Public nuisance by [NCDOT]" (id. ¶¶ 34-37). NCDOT and Goodwill separately moved to dismiss the claims against them. (Docket Entries 12, 15.) Plaintiff responded in opposition (Docket Entry 23) and both Defendants replied (Docket Entries 25, 26). Plaintiff has also moved to reissue his Summons. (Docket Entry 21.)

<u>DISCUSSION</u>

Defendant NCDOT argues that it "is shielded from Plaintiff's claims by Eleventh Amendment immunity . . . ." (Docket Entry 13 at 9.) The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Furthermore, "'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'" <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984) (quoting <u>Employees v. Missouri Pub. Health & Welfare Dep't</u>, 411 U.S. 279, 280 (1973)). "This immunity extends to any State instrumentality that is considered an 'arm of the State.'" <u>Blackburn v. Trustees of Guilford Tech. Cmty. Coll.</u>, 822 F. Supp. 2d 539, 542 (M.D.N.C. 2011) (Schroeder, J.) (quoting <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429-30 (1997)).

NCDOT is an arm of the State of North Carolina and, therefore, the Eleventh Amendment shields it from suit in federal court unless it consents. See <u>Weaks v. North Carolina Dep't of Transp.</u>, 761 F. Supp. 2d 289, 296 (M.D.N.C. 2011) (Schroeder, J.) ("Defendants [NCDOT, NCDMV] are arms of the State of North Carolina."); <u>see also Brown v. North Carolina Div. of Motor Vehicles</u>, 166 F.3d 698, 705

6

(4th Cir. 1999) (NCDMV, "as a department of the state, is immune from suit . . ."). Plaintiff's Complaint does not allege that either the State of North Carolina or NCDOT have consented to suit in federal court brought under the Equal Protection Clause or the state law causes of action at issue in this case. (See Docket Entry 2.)

Under these circumstances, the claims against NCDOT are barred by the Eleventh Amendment and should be dismissed. See, e.g., Joseph v. Board of Regents of the Univ. of Wis. Sys., 432 F.3d 746, 748 (7th Cir. 2005) ("We find that the district court properly dismissed [the plaintiff's] complaint [asserting a violation of the Equal Protection Clause against a state agency] because it is barred by the Eleventh Amendment of the United States Constitution."); Mixon v. Ohio, 193 F.3d 389, 394 (6th Cir. 1999) ("[T]he Eleventh Amendment bars the state law and federal Equal Protection claims against the State of Ohio and we DISMISS those claims."); Houck & Sons, Inc. v. Transylvania Cnty., No. 93-1462, 36 F.3d 1092 (table), 1994 WL 175527, at *1 (4th Cir. May 10, 1994) (unpublished) (affirming district court's ruling that "Eleventh Amendment barred [the plaintiff's] equal protection claim against the defendants because [they] are state agents entitled to Eleventh Amendment immunity").

Even without the Eleventh Amendment bar, Plaintiff's claims under the Equal Protection Clause fail on the merits for the

reasons stated in the undersigned's denial of Plaintiff's Application to Proceed <u>In Forma Pauperis</u>. (<u>See</u> Docket Entry 11 at 5-8.) The only remaining claims arise under state law. (<u>See</u> Docket Entry 2, ¶¶ 28-37.) Given the absence of a viable federal constitutional or statutory claim and of grounds for the exercise of diversity jurisdiction,[1] any remaining state law claim should not proceed in this Court. <u>See, e.g.</u>, 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state] claim . . . [when] the district court has dismissed all claims over which it has original jurisdiction . . . ."); <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); <u>Waybright v. Frederick Cnty., Md.</u>, 528 F.3d 199, 209 (4th Cir. 2008) ("With all its federal questions

_____

[1] Plaintiff's Complaint offers no facts to support the legal conclusion that he is "domiciled" in Pennsylvania, despite residing in North Carolina (Docket Entry 2, ¶ 1). The only allegations concerning Defendants' citizenship support the conclusion that both are citizens of North Carolina. (<u>See</u> <u>id.</u>) Under these circumstances, no diversity of citizenship exists. Furthermore, the Complaint does not allege damages of more than $75,000. (<u>See</u> <u>id.</u> ¶¶ 38-39 (requesting actual damages "of no less than ten thousand dollars ($10,000) from each defendant" and punitive damages "of no less than ten thousand dollars ($10,000) from each defendant").) "[Where] [t]he stated demand is for damages in excess of $10,000 . . . [and the plaintiff] asks for both compensatory and punitive damages, the value of th[e] claim is speculative. A finding of jurisdiction cannot be premised on such speculation." <u>Gwyn v. Wal-Mart Stores, Inc.</u>, 955 F. Supp. 44, 46 (M.D.N.C. 1996).

gone, there may be the authority to keep [the case] in federal court . . . but there is no good reason to do so.").

CONCLUSION

Plaintiff's claims against NCDOT may not proceed in this Court under the Eleventh Amendment and his federal law claims would fail on the merits regardless.  Under such circumstances, any remaining state law claim should not proceed in this Court.

**IT IS THEREFORE RECOMMENDED** that NCDOT's Motion to Dismiss (Docket Entry 12) be granted in part, in that all claims against NCDOT should be dismissed under the Eleventh Amendment and in that Claims One and Two should be dismissed with prejudice for failure to state a claim, such that Claims Three, Four, and Five should be dismissed without prejudice pursuant to the Court's exercise of its discretion under 28 U.S.C. § 1367(c)(3).

**IT IS FURTHER RECOMMENDED** that Goodwill's Motion to Dismiss (Docket Entry 15) be denied as moot because, as a result of the disposition of NCDOT's Motion to Dismiss, no federal claim survives and Claim Four (the only claim against Goodwill) should be dismissed without prejudice pursuant to the exercise of the Court's discretion under 28 U.S.C. § 1367(c)(3).

9

**IT IS ORDERED** that Plaintiff's Motion to Reissue Summons is **DENIED AS MOOT**.

                                        /s/ L. Patrick Auld
                                        **L. Patrick Auld**
                                        **United States Magistrate Judge**
September 28, 2012